IN THE UNITED STATES DISTRICT OF COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| Devonn Ross, on behalf of herself and all others similarly situated, <br>    *Plaintiff*, <br><br> v. <br><br> Convergent Outsourcing, Inc., and LVNV Funding, LLC <br>    *Defendants*. | § § § § § § § § § § | Case No. 1:16-CV-00825-PAG-KLM |

### DEFENDANTS' OPPOSITION TO MOTIONS TO INTERVENE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Convergent Outsourcing, Inc. ("Convergent") and LVNV Funding, LLC ("LVNV") (collectively "Defendants"), and for their Response to Christine Parmelee's Amended Motion to Intervene (Doc. 62), Tamara Alexander's Motion to Intervene (Doc. 63), and Jeremy Estrella's Motion to Intervene (Doc. 64), state as follows:

### I. Introduction

1. Following the Fifth Circuit's decision in *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016), Convergent has been hit with a flood of lawsuits, several brought as putative class actions, alleging that Convergent violated the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq. ("FDCPA") by making a "settlement offer" on a time-barred debt, without disclosing (or adequately disclosing) that the debt was time-barred, that the consumer could not be sued on the debt, and that any partial payment might serve to reset the statute of limitations. Having since revised its settlement offer letters accordingly, Convergent now seeks to resolve the potential exposure arising from those earlier letters by resolving all of those claims in a single venue with a proposed nationwide global settlement, pursuant to which Convergent will (1) pay the *maximum* $500,000 in "statutory" damages available under the FDCPA; (2) create an additional $500,000

fund to be distributed to class members who claim actual damages (in the form of payments made to Convergent after receiving one of the allegedly offending letters); (3) pay all costs of notice and administration for a class that numbers in excess of 3.7 million persons; and (4) pay reasonable attorney's fees and costs to be determined by the court. The parties' Joint Motion for Conditional Class Settlement and Preliminary Approval of Class Settlement (Doc. 56) was filed on April 14, 2017 and is awaiting hearing by this Court.

2. The proposed intervenors (Parmalee, Alexander and Estrella) (the "Intervenors") have each filed their own putative class actions (in New York, Texas, and Oregon, respectively) making virtually identical allegations against Convergent arising out of "settlement offer" letters sent on time-barred debts. They now seek to formally intervene in the instant case, pursuant to Fed R. Civ. P. 24, for purposes of "objecting" to the proposed nationwide settlement on the grounds that it would subsume their putative state-wide class actions. Notwithstanding the crocodile tears that Intervenors' counsel shed for the class members who they claim will receive only a "paltry" recovery under the proposed settlement, their real concern is with losing out on a lucrative attorney's fee award. If Intervenors' counsel were truly concerned with their clients' recovery, then they should have them opt out of the proposed class settlement and pursue their claims on an individual basis, where they can recover up to $1000 in statutory damages as well as any unique actual damages they claim to have incurred, plus attorney's fees and costs. Pursuing that course would not, however, generate the same kind of fee award as would a class action.[1]

3. The other option for the proposed Intervenors, if they feel the proposed class settlement is so inadequate, is to file objections pursuant to the terms of the proposed settlement as well as Rule

---

[1] Indeed, at least one of the proposed Intervenors has twice offered to settle his/her case on an individual basis, but only at an exorbitant amount that makes it clear that he/she and his/her counsel are leveraging the class action device in order to extract a larger individual settlement than would otherwise be the case.

23. The proposed Intervenors can appear and have their objections heard at both the preliminary approval and final approval stages (and preserve their ability to appeal, if need be), all without the need to intervene and become parties under Rule 24. Indeed, in their motions, the proposed Intervenors mostly focus on what they perceive as the inadequacies of the proposed settlement, all of which can be addressed in due course at the preliminary approval hearing and the final fairness hearing.

4. Bottom line, what the proposed Intervenors are unhappy with is that Convergent proposes to resolve these claims in a single, nationwide class action, instead of allowing the proposed Intervenors and their counsel to pursue multiple and duplicative class actions, state by state (or even on a more limited geographic basis), in order to recoup multiple awards of statutory damages and, of course, multiple awards of attorney's fees and costs, which only benefits Intervenors' counsel. As this Court has noted before, if the Intervenors are unhappy with the settlement, they "may choose not to join the settlement and litigate independently or remain in the case and file objections to the settlement detailing why the proposed settlement is unfair under the Rule 23 factors." *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2013 WL 4547404, at *12 (D. Colo. Aug. 28, 2013). However, it is insufficient to warrant intervention under Rule 24, either by right or by permission.

## II. Arguments and Authorities

### A. Standard of Law

5. An applicant may intervene as a matter of right under Fed. R. Civ. P. 24(a) if: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties. *Coal.*

*of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996).

6. Alternatively, under Fed. R. Civ. P. 24(b), "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." While permissive intervention lies in the court's discretion, the court is "required to consider whether the intervention will 'unduly delay or prejudice' the adjudication of the rights of existing litigants." *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005). Additionally, "a court's finding that existing parties adequately protect prospective Intervenors' interests will support a denial of permissive intervention." *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 249 (D.N.M. 2008) (citing *City of Stilwell, Oklahoma v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)).

### B. Intervenor's interest

7. The interest of the intervenor must be "direct, substantial, and legally protectable." *Coal. of Arizona/New Mexico*, 100 F.3d at 840. The inquiry is highly-fact specific. *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001).

8. It is likely that the Intervenors have a legal interest based on the operation of the FDPCA. However, as a more particular matter, the right to recovery that this present suit will settle does not currently exist for two of the Intervenors. As some of the Intervenors point out, the cases that these suits rely on, in particular *McMahon* from the Seventh Circuit and *Daugherty* from the Fifth Circuit, are not binding on courts in the Tenth Circuit. Nor are these cases binding in the Second Circuit, where Parmelee filed her complaint, or the Ninth Circuit, where Estrella filed his complaint. Stated differently, the Intervenors want to derail this settlement, which represents the

best and most efficient opportunity for the class members to recover, even though there is no guarantee the Intervenors will prevail in their lawsuits filed in other Circuits.

### C. There will be no impairment of interest

9. The Intervenors must "demonstrate that the disposition of this action may as a practical matter impair or impede their ability to protect their interest." *Clinton*, 255 F.3d at 1253. To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. *Id.* (citations omitted).

10. The Intervenors have not demonstrated that there will be any impairment or impediment to their ability to protect their interest. The Intervenors will have the right to opt-out of the class and separately pursue their own claims. *See Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 881 (7th Cir. 2000) (a potentially inadequate settlement or problems with the class definition might not occasion intervention given the possibility of an opt-out); *Grilli v. Metro. Life Ins. Co.*, 78 F.3d 1533, 1536 (11th Cir.), *opinion clarified*, 92 F.3d 1074 (11th Cir. 1996) (no right to intervene when a party "could protect their interest either by opting out of the class and litigating separately, or by remaining in the case . . . [and] objecting to it."); *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *12 ("Should National Roofing find the terms of the Settlement Agreement unfair, it may choose not to join the settlement and litigate independently or remain in the case and file objections to the settlement detailing why the proposed settlement is unfair under the Rule 23 factors.").

11. The Intervenors believe their interests are not represented because of the amount that they might recover. *E.g.*, Doc. 62 at 8. Several courts have held that neither Rule 23 nor the FDCPA require more than a minimal recovery per class member for a class settlement to obtain approval. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("[W]e believe that a de minimis recovery (in monetary terms) should not automatically bar a class action.") In *Abels v.*

*JBC Legal Group,* 227 F.R.D. 541 (N.D. Cal. 2005), the court found that class litigation would be superior despite finding that the class members might each only receive $0.25 in damages. *Abels,* 227 F.R.D. at 547. Likewise, in *Datta v. Asset Recovery Sols., LLC*, No. 15-CV-00188-LHK, 2016 U.S. Dist. LEXIS 36446 (N.D. Cal. Mar. 18, 2016), the court noted that "every district court within the Ninth Circuit has, when presented with this question, held that 'the likelihood of a de minimis class recovery under the FDCPA is not a bar to class certification.'" *Id.* at *23-24 (noting that estimated per class member recovery between $0.00000111 and $11.28 has been deemed acceptable); *see also Tripp v. Berman & Rabin*, P.A., 310 F.R.D. 499, 507 (D. Kan. 2015) ("[F]ederal courts have held that a FDCPA class action is a superior method for adjudication, even where class members stand to recover a de minimis amount."); *Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 645 (D. Utah 1998) (adopting the holding in *Mace* as to de minimis recovery). Courts have even approved FDCPA class settlements where the class members do not receive any monetary recovery at all. *See Catala v. Resurgent Capital Servs. L.P.*, No. CIV.08CV2401 NLS, 2010 WL 2524158, at *3 (S.D. Cal. June 22, 2010) ($35,000 *cy pres* payment to legal aid society and no payment to 195,561 class members); *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, No. CV-04-2195 CPS, 2006 WL 3681138, at *4 (E.D.N.Y. Dec. 11, 2006) ($15,000 *cy pres* payment to legal aid society and no payment to 45,000 class members).

12.     The Intervenors have all made the same basic argument that "there is no authority for requiring the broadest possible class, and the requirements of Rule 23 of the Federal Rules of Civil Procedure encourage specific and limited class." Doc. 62 at 9. The Intervenors rely on the *Mace* case (cited above for the proposition that small recovery amounts should not prohibit class recovery). This is immaterial to the issue at hand. The text of the statute does not prohibit nationwide classes, and expresses no preference for nationwide or state classes. There is no

requirement for nationwide classes, but there are also no restrictions against nationwide classes. The instant class is specific and limited in the liability at issue. The class can be grouped together because they are capable of "advanc[ing] the same factual and legal arguments." *Mace*, 109 F.3d at 341. The Intervenors arguments about whether a nation-wide class action is prohibited are entirely immaterial to the issue of intervention, and have no bearing on whether the Intervenors should be allowed to intervene in this case. The other cases about a nationwide FDCPA class settlement being rejected, such as *Graff v. United Collection Bureau, Inc.,* are easily distinguishable from this present action. Doc. 64 at 8; *see Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 482 (E.D.N.Y. 2016). The settlement in *Graff* was deemed unfair because there was no benefit to the class members at all. *Id.* at 482. The settlement in *Graff* called for the named plaintiff to receive $2,500 and for a *cy pres* payment of $39,819 to be made to a consumer non-profit, whereas the class members received nothing at all. *Id.* The Court noted that the "parties have not proffered any valid explanation for the sweeping increase in the size of the class without any concomitant increase in the value of the settlement to that class." *Id* at 482. Several other cases cited by the Intervenors feature *cy pres* payments as well. *See, e.g.*, *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1074 (9th Cir. 2017) (settlement featured $1,000 to each named plaintiff and $35,000 *cy pres* payment to charity organization).

13. In this case, Defendant has agreed to pay $500,000, the maximum in statutory damages, as well as an additional $500,000 in actual damages, to the class members. Doc. 56-1 at 11-12. Clearly this case, where Defendant will pay out $1,000,000 to the class members, is vastly different than the cases cited by the Intervenors where the class members received nothing.

14. The Intervenors have not shown that any impairment is possible, as their right to opt-out and pursue this case individually will remain. *See In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404,

at *12; *Crawford*, 201 F.3d at 881. Their concerns regarding the settlement amount and class sizes are immaterial to whether they should be allowed to intervene, not to mention unsupported by law. This factor clearly weighs against granting intervention.

### D. There is already adequate representation

15. Even if the Intervenors can establish the first three elements—which they cannot—they still are not entitled to intervene if their "*interest 'is adequately represented by existing parties.'*" *Clinton*, 255 F.3d at 1254 (citing *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984)) (emphasis added). The Tenth Circuit has recognized that a "presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation." *Id.* at 1254. "[R]epresentation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case." *Sanguine,* 736 F.2d at 1419. Nor is representation inadequate if the parties enter into a consent decree or settlement. *Id*.

16. Here, the Intervenors cannot show that they are inadequately represented by the existing parties. Both Plaintiff and the Intervenors should have the same ultimate objective: recovery on behalf of the class. They must necessarily have the same objective, because it is the only recovery possible under the FDCPA. 15 U.S.C § 1692k. Thus, the Tenth Circuit's presumption of adequate representation applies. *Clinton*, 255 F.3d at 1254; *see Hershey v. ExxonMobil Oil Corp.*, 278 F.R.D. 617, 621 (D. Kan. 2011) ("Differences in underlying trial strategies—such as different theories to obtain the most recovery for a plaintiff class in the face of potential statute of limitations defenses—are not a sufficient difference of interest to justify revocation of the presumption of adequate representation."); *Genesis Ins. Co. v. Crowley*, No. CIVA05CV00335WDMPAC, 2005 WL 3989772, at *4 (D. Colo. Aug. 31, 2005) ("In the Tenth Circuit, representation is

**Defendants' Opposition to Motions to Intervene**                                                                Page **8** of **15**
253.0022 Response to Motions to Intervene FINAL.docx

presumptively adequate when the purported intervenor's objective is identical to that of one of the parties.").

17. The Intervenors challenge the adequacy of representation solely based on the proposed settlement. *E.g.*, Doc. 62 at 10-11. However, this is not grounds to challenge adequate representation. *Sanguine*, 736 F.2d at 1419. Additionally, the declaration of Parmelee's counsel is immaterial. The issue is not whether the Intervenors' counsel could be better, but whether Plaintiff's counsel in this case is adequate. The Intervenors have not shown any reason to find that there is any inadequacy of counsel in this case. The declaration of David N. McDevitt shows that Plaintiff's attorneys will adequately represent the class. Doc. 56-2.

18. Nor is there any evidence that this is a "reverse auction" or that Plaintiff's counsel is "the most ineffectual class lawyers" (Doc. 64 at 12), or that "the Plaintiff's counsel have, in essence, sold out the class members they are supposed to be representing." Doc. 63 at 6-7. Far from being some attempt to undercut the class members or other class actions, this case was the most suitable for nationwide settlement because it was the earliest of the class actions filed against Defendant on this theory of liability. *Cf. In Re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 788 (3rd Cir. 1995) ("[A]ttorneys jockeying for position might attempt to cut a deal with the defendants by underselling the plaintiffs' claims relative to other attorneys."). There are no payments of "generous attorneys' fees" to encourage class counsel to "sell out [the] class[.]" *Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002). The proposed settlement calls for paying $300 an hour to the class attorney, a reasonable rate for FDCPA class action work. *See Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010) (upholding $300 an hour rate for a FDCPA class action specialist). Plaintiff's attorneys have been certified as class counsel in several other FDCPA class actions, in addition to successfully winning

the *Daugherty* case—one of the primary cases upon which Intervenors rely—at the Fifth Circuit Court of Appeals. Doc. 56-2.

19.     The Intervenors' entire complaint is, once again, that they do not agree with the settlement. They present no evidence that the negotiations undertaken were flawed or inappropriate beyond conclusory statements. Representation is not inadequate just because the Intervenors disagree with the law or the facts, or because the parties conducted settlement talks, especially not when said settlement has to be approved by the Court. *Sanguine,* 736 F.2d at 1419. Because the Intervenors have presented no evidence that the representation is inadequate, their motions to intervene should be denied.

### E. Permissive intervention should be denied

20.     Permissive intervention in this case by the Intervenors should also be denied. It has already been shown that there is a chance of causing prejudice and delay if the intervention is allowed, as this case already has a pending motion to certify on file with the court. *See DeJulius*, 429 F.3d at 943. It has also been shown that there is adequate representation of the interests of Plaintiff and the class members. *See Herrera*, 257 F.R.D. at 249. Other factors favor denying the intervention as well.

21.     The Intervenors' requests for permissive intervention are unpersuasive. They complain that the proposed method of notice via postcard is inadequate despite it being an accepted practice in FDCPA class action suits, and despite the fact that the proposed settlement also calls for email notice as well as the creation of a website related to the settlement. *E.g.*, Doc. 56-1 at 6-7. Fed. R. Civ. P. 23 requires that notice be the "best notice that is practicable under the circumstances." Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Powers v. Credit Mgmt. Servs., Inc.*, No. 8:11CV436, 2016 WL 3983250, at *2 (D. Neb. July 25, 2016). The Intervenors offer no proof or evidence that a postcard is "a method designed to be ignored or lost." Doc. 62 at 12. Notice by postcard in FDCPA cases has previously been deemed sufficient within this Circuit. *See Powers, 2016 WL 3983250, at *4* (holding that notice of settlement of an FDCPA class action by post card is adequate); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (postcard notice complied with "best practicable notice" standard); *Graham v. Capital One Bank (USA), N.A.*, No. SACV13743JLSJPRX, 2014 WL 12579809, at *7 (C.D. Cal. July 29, 2014) (same).

22.     Likewise, their complaints as to the class size and the size of recovery are unpersuasive and unsupported. There is no requirement or preference in the rules for smaller or state-wide only classes, and there is established class law holding that recovery amounts that Intervenors complain about are acceptable. *See Abels,* 227 F.R.D. at 547. Finally, there is no guarantee that the settlement amount, if any, or potential award in any other class action will match the amount of the proposed settlement in this case. *See* Doc. 62 at 13. The Intervenors' claims as to what each class member would be entitled in any other class action are nothing more than conjecture.

23.     The Intervenors have repeatedly accused Defendant of withholding information from this Court. *E.g.*, Doc. 62 at 2, 13; Doc. 64 a 6, 13. The idea that Defendant has an affirmative duty to inform the court of every pending class action against it is not supported by any of the cases cited by the Intervenors. Doc. 62 at 13. For example, in *Koby*, the settlement was overturned because the "settlement's injunctive relief [was] worthless to most members of the class because it merely dictates the disclosures ARS must make in future voicemail messages for a period of two years." *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2017). It had nothing to do with disclosing other cases to the Court. The section of *Amchem Products* cited by Parmelee stands for

the idea that courts should pay more attention in settlement class certifications, and has nothing to do with disclosing other lawsuits. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248, 138 L. Ed. 2d 689 (1997). *Smith* dealt with a settlement class where it had already been determined that the class could not be certified for trial, something which has not happened here. *Smith v. Sprint Commc'ns Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004). Fed. R. Civ. P. 23(b)(3)(B) requires the Court to consider, among other things, other litigation concerning the same controversy. Nowhere in the Rules or any order of this Court is there an affirmative duty to inform the Court of every case concerning this litigation. Had the Court requested such information, then the parties would have gladly supplied it.

24. Nor have the Intervenors presented any case law or rule to show why other class actions being subsumed by a nationwide class is grounds for intervention. *E.g.*, Doc. 62 at 14. Defendant has moved to stay other actions pending the resolution of the class certification in *Ross* to avoid class overlaps and inconsistent judgments. This is a generally accepted purpose of stays. The Intervenors have nothing to show that any improprieties were committed by Convergent in this process.

25. Furthermore, it is entirely unnecessary to have three intervenors who all have the same goal and make substantially the same arguments. Docs. 62, 63, & 64. None of the motions to intervene present any distinct or unique arguments. And, as it is patently obvious, the motions to intervene filed by the Intervenors are more an attack on the proposed settlement than an aspiration to intervene, as they spend almost the entirety of their motions attacking the settlement rather than attempting to establish the prerequisites for intervention. Forcing either Plaintiff or Defendant to needlessly respond to several identical motions that present the same unpersuasive arguments is a waste of both the parties and the Court's time. Finally, as has been stated multiple times, the

Intervenors can always "choose not to join the settlement and litigate independently or remain in the case and file objections to the settlement detailing why the proposed settlement is unfair under the Rule 23 factors." *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *12.

26. Permissive intervention should be denied. It would result in prejudice the parties in this case and unduly delay resolution of this case. *See DeJulius*, 429 F.3d at 943 ("The district court's conclusion that the notice procedures in this case were adequate . . . can be read as a conclusion that the intervention Appellants sought would cause undue delay to the final disposition of the class settlement.") The other factors analyzed *supra* also support denial. The Intervenors' other claims are unsupported and meritless, and should not be considered.

### III. Conclusion

27. The Intervenors have failed to establish the factors for mandatory intervention, and have not shown good cause for permissive intervention. For the reasons set forth above, the Motions to Intervene should be denied.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that this Court deny the Motions to Intervene.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted,

**MALONE AKERLY MARTIN PLLC**

*/s/* Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@mamlaw.com
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@mamlaw.com
**MALONE AKERLY MARTIN PLLC**
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
T: 214-346-2630 | F: 214-346-2631

***COUNSEL FOR DEFENDANTS CONVERGENT OUTSOURCING, INC. AND LVNV FUNDING, LLC***

[CERTIFICATE OF SERVICE ON NEXT PAGE]

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served **via CM/ECF** to all known counsel of record on this 2nd day of June, 2017 to:

*Counsel for Plaintiff*
Russell S. Thompson, IV
David McDevitt
Thompson Consumer Law Group, PPLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
P: 602-388-8898 | F: 866-317-2674
rthompson@consumerlawinfo.com
dmcdevitt@consumerlawinfo.com

*Counsel for Christine Parmelee*
David J. Philipps
Mary E. Philipps
Philipps & Philipps. LTd.
9760 South Roverts Road, Suite One
Palos Hills, Illinois 60465
P: 708-974-2900 | F: 708-974-2907
davephilipps@aol.com
mephilipps@aol.com

*Counsel for Jeremy Estrella*
Kelly D. Jones
819 SE Morrison St, Suite 255
Portland, OR 97214
P: 503-847-4329
Kellydonovanjones@gmail.com

*Counsel for Theresa Matthews*
Mark Leon Vavreck
Gonko & Vavreck, PLLC
401 North Third Street
Suite 600
Minneapolis, MN 55401
(612) 659-9500
Fax: (612) 659-9220
mvavreck@cgmvlaw.com

*Counsel for Christine Parmelee*
Brian R. Bromberg
Bromberg Law Office, P.C.
236 Broadway, 21st Floor
New York, NY 1004
P: 212-248-7906
brian@bromberglawoffice.com

*Counsel for Tamara Alexander*
Karen L. Kellett
Kellett & Bartholow PLLC
11300 N. Central Expy., Ste. 301
Dallas, TX 75243
kkellett@kblawtxcom

*/s/* Robbie Malone
ROBBIE MALONE