**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**COURT FILE NO.: 1:16-cv-00825-PAB -KLM**

Devonn Ross, *on behalf of herself
and all others similarly situated,*

      Plaintiff,

v.

Convergent Outsourcing, Inc.
and LVNV Funding, LLC,

      Defendants.

---

**PLAINTIFF'S RESPONSE TO MOTIONS TO INTERVENE**

---

      Plaintiff Devonn Ross ("Plaintiff") hereby responds to the motions to intervene filed by Christine Parmelee ("Parmelee"), *see* Doc. 62, Tamara Alexander ("Alexander"), *see* Doc. 63, and Jeremy Estrella ("Estrella"), *see* Doc. 64.  In support thereof, she respectfully shows as follows:

**I.      Introduction**

      Several individuals (hereinafter "Putative Intervenors") have sought to intervene in this action, arguing that the proposed class settlement is unfair, collusive, and the product of a reverse auction.  While these assertions are untrue and unfounded, their arguments are premature, and the Putative Intervenors fail to meet the requirements for intervention of right under Rule 24(a).

      Plaintiff has no reservations about pointing out 'the elephant in the room:' that the *true interest* sought to be protected here is the Putative Intervenors' counsel's entitlement to attorneys' fees and costs—not the interest of their clients.  *Their clients'* interests may be protected by objecting to or excluding themselves from the proposed settlement, if the Court grants preliminary approval.  The Court should decline the opportunity to delay considering whether to do so.

1

Allowing named-plaintiffs in competing or overlapping putative class actions to intervene anytime there is a proposed settlement does not serve the public interest.  It invites opportunism by those members who see a way to enhance the value of their individual claims by delaying the settlement for the rest of the class—when Rule 23 already contains a mechanism for participating class members to lodge objections to the fairness of any settlement.  Here, where intervening changes in controlling law are the norm, such a delay could jeopardize the entire settlement.  Plaintiff respectfully requests that the Court deny the Putative Intervenors' motions.

## II.    Legal Standard

Under Rule 24(a), "the [C]ourt must permit anyone to intervene who…claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

Under Rule 24(b), the Court may permit anyone who "has a claim or defense that shares with the main action a common question of law or fact" to intervene.  Fed. R. Civ. P. 24(b)(1)(B).  "In exercising its discretion, the [C]ourt must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

## III.    The Putative Intervenors fail to establish that they have an interest in this action that will be impaired unless they are permitted to intervene.

The Court is not required to grant the Putative Intervenors' motions.  Each fails to satisfy the requirements for compulsory intervention under Rule 24.  The only interest of the Putative Intervenors *themselves*—as opposed to their counsel—is an entitlement to statutory damages under the FDCPA.  Of course, under Rule 23, they "may choose not to join the settlement and litigate independently," if they are unsatisfied with the proposed settlement.  *In re Crocs, Inc. Sec. Litig*., No. 07-CV-02351-PAB-KLM, 2013 WL 4547404, at *12 (D. Colo. Aug. 28, 2013) (Brimmer, J.).

2

Thus, they cannot establish that the proposed settlement "may as a practical matter impair or impede [their] *ability to protect* [their] interest." Fed. R. Civ. P. 24(a)(2) (emphasis added).

**A.      The Putative Intervenors' only conceivable interest is in collecting a share of the statutory damages available to the Class.**

The proposed settlement will not impede the Putative Intervenors' ability to protect *their* interest.  "The movant's claimed interest is measured in terms of its relationship to the property or transaction that is the subject of the action, *not in terms of the particular issue* before the district court."  *United States v. Wagner*, No. 07-CV-00978-MSK-KMT, 2011 WL 2415384, at *4 (D. Colo. June 16, 2011) (emphasis added).

**1.      The Putative Intervenors only represent themselves.**

Here, the Putative Intervenors assert that they have an interest in this action, because they have filed similar class actions.  But none have been certified as a representative under Rule 23. "[U]ntil certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013) (quoting *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir.2002)).  Thus, at the moment, their arguments depend on whether their ability to protect their own claims under the FDCPA may be impaired by the settlement.

**2.      The Putative Intervenors have no claim to actual damages.**

The FDCPA entitles a successful consumer to (1) actual damages caused by a debt collector's violation, (2) statutory damages up to $1,000 (or a portion of class damages), and (3) their reasonable attorneys' fees and costs.  *See* 15 U.S.C. § 1692k(a).  None of the Putative Intervenors claim to have made a payment to Convergent in response to its deceptive letters, so they cannot claim an interest in the amount of "actual damages" proposed to be paid in the

proposed settlement.  Accordingly, their only protectable interest is in obtaining statutory damages as *class members* under § 1692k(a)(2)(B).[1]

Under this provision, their interest is in receiving "such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 [%] of the net worth of the debt collector."  15 U.S.C. § 1692k(a)(2)(B)(ii).  As the proposed settlement calls for Convergent to pay the *maximum* amount of statutory damages to the class—$500,000—the Putative Intervenors' do not have an interest in receiving a share of a *larger* amount.  Instead, the interest they are claiming is the right to share statutory damages among a *smaller number* of other class members.  Given that the FDCPA provides such an interest to "other class members, without regard to a minimum individual recovery," it is not at all clear that they have a cognizable interest in sharing class damages with fewer people.

3.    **Their counsels' entitlement to attorneys' fees and costs is not a legitimate interest of the Putative Intervenors.**

The 'elephant in the room' here is that the real right that may potentially be impaired—and the one motivating the requested relief—is the Putative Intervenors' *counsel's* claim to attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3) and/or Rule 23(h).  Plaintiff's counsel does not deny that it, too, is incentivized by these provisions to bring actions on behalf of consumers.  It is simply not an appropriate consideration under Rule 24.  Even if the Court assumed, *arguendo*, that the Putative Intervenors' risk of being *liable* to their attorneys for their fees and costs constituted a sufficient interest under Rule 24—and they have not made this argument—they have failed to present any such evidence that they would be.

---

[1] Notably, while the Putative Intervenors make passing arguments about why the Court should not certify a nationwide class, their stated purpose for intervening is *not* to file a brief in opposition to class certification under Rule 23(b)(3).  Instead, they state that they wish to intervene to contest the "fairness" of the proposed settlement and to "conduct discovery."  *See* Doc. 62 at 1, 2, 6; Doc. 63 at 1, 2, 7; Doc. 64 at 1, 2.

This is a significant failure of evidence, given the common practice of such cases being taken on contingency. *Cf. Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) (observing that "[i]n order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with…'what that attorney could earn from paying clients' ") (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993)). The likelihood of this is even higher here than in an ordinary fee-shifting scenario, or even a typical FDCPA action, as all of these cases involve debtors who received letters about stale, unpaid debts.

**B.     The Putative Intervenors' ability to protect their interest in statutory damages is not at risk of being impaired by the proposed settlement.**

The Putative Intervenors cannot show that the proposed settlement may impair their ability to protect their interest in collecting statutory damages under the class settlement. Rule 23(b)(3) already gives them the ability to protect these interests if the class is certified or to exclude themselves altogether. *See* Fed. R. Civ. P. 23(c)(2)(B)(iv) (requiring class notice to a certified class to state "that a class member may enter an appearance through an attorney if the member so desires"); Fed. R. Civ. P. 23(c)(2)(B)(v) ("that the court will exclude from the class any member who requests exclusion"); Fed. R. Civ. P. 23(e)(5) ("Any class member may object to the proposal if it requires court approval…."). Indeed, those class members who have retained counsel to pursue these claims on their behalf could receive more in an individual action than they would in virtually *any* class settlement.[2]

The Putative Intervenors "may choose not to join the settlement and litigate independently or remain in the case and file objections to the settlement detailing why the proposed settlement is

---

[2] Alexander's counsel points to two other putative class actions—in which they also represent the plaintiff and where the number of class members is purportedly fewer than 500—to argue that, in these cases, "each class member[] would be entitled to $1,000 in statutory damages…" Doc. 63 at 14. This is not true. The court may award *up to* this amount, but it also may award nothing at all. In any event, Alexander's counsel has not moved to intervene on behalf of these individuals.

unfair under the Rule 23 factors." *In re Crocs*, 2013 WL 4547404 at *12 (Brimmer, J.) (citing *Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536-38 (11th Cir.1996) for the proposition that the "district court did not abuse discretion in denying motion to intervene, based on the court's conclusion that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, objecting to it"). What's more, unnamed class members are not required to intervene to have standing to appeal the approval of a class settlement to which they have objected. *Devlin v. Scardelletti*, 536 U.S. 1, 3–4 (2002).

If the Court grants preliminary approval and the Putative Intervenors decide that they would like to subject their individual claim to a court's determination on liability and the appropriate amount of statutory damages under § 1692k(b)(1), they are free to do so. All they need to do is request exclusion from the Court.

## IV. Permissive intervention should be denied, as it will only delay the action, which could jeopardize the proposed settlement.

In reviewing whether to exercise its discretion in permitting intervention, "the [C]ourt must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Additional parties always take additional time that may result in delay and that thus may support the denial of intervention." *United States v. N. Colorado Water Conservancy Dist.*, 251 F.R.D. 590, 599 (D. Colo. 2008) (quoting 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1913 (3d ed.2007)). "Nonetheless, 'delay in and of itself does not mean that intervention should be denied,' and a court should decide in its discretion whether intervention will 'unduly delay' the adjudication." *Id.* "[T]he Tenth Circuit has explained that if an applicant's

intervention 'clutters the action' without aiding the current parties or issues, the applicant's motion to intervene may be denied." *Id.* (quoting *Arney v. Finney*, 967 F.2d 418, 421–22 (10th Cir.1992)).

A.      **The Putative Intervenors do not explain how they will aid the current parties or assist the Court with the issues.**

Permitting the Putative Intervenors to contest the proposed settlement and conduct discovery into the fairness of its terms would substantially delay the Court's determination of whether to preliminarily approval the settlement presented. At the same time, the Putative Intervenors have failed to present any argument about how their intervention will "aid the current parties or issues," and, indeed, there does not appear to be any.

The Putative Intervenors offer that they will take discovery into the "unknown" amount of money paid to Convergent by an undetermined number of class members. The Putative Intervenors, themselves, did not make any payments, and thus can personally contribute nothing to the actual damages issue. That their counsel was unable or unwilling to deduce these "unknown" amounts from the information presented (through a joint submission by the parties) demonstrates that they, likewise, will not assist the Court in determining any relevant issues pertaining to actual damages.

From the representation that $500,000 would provide a reimbursement of more than 66%, assuming a 5% participation rate, *see* Doc. 56 at 16-17, it can be determined that 5% of the total payments was slightly more than $750,000, and, thus, the total amount of payments was just over $15 million. From the representation that the $500,000 reimbursement would be in the form of payments averaging roughly $182.21, *id.*, it can be determined that approximately 2,744 were expected to receive payments. Thus, based on the stated anticipated participation rate of 5%, the total number of individuals of individuals who made payments was approximately 54,880—less than 1.5% of those to whom Convergent sent letters.

These are simple calculations, and while Convergent would not join in a publicly filed submission that made these representations about its business practices outright, Plaintiff's counsel would not join in a submission that failed to present the Court with the relevant information necessary to make a fairness determination.   Convergent will be required to corroborate these representations through its business records, *see* Doc. 56-1 at 6 (Section 6.B requiring Convergent to provide list of all class members and payments made to Class Counsel and Claims Administrator), and Plaintiff established the manner in which this information would be provided prior to the time the parties moved for preliminary approval, *see* Doc. 56-2 at ¶ 17 ("Convergent has indicated that this information will be provided in a .SQL file format.").

While the Putative Intervenors are likely to argue that this information further justifies their intervention, they are wrong.  The issue dispositive of whether the proposal is fair, adequate, and reasonable is not what percentage of Convergent's revenue will be paid in the settlement.  The FDCPA lacks a punitive damages provision, caps statutory damages, and requires a causal nexus between a collector's violation and actual damages.  The dispositive issue is what percentage of the payments made by those who claim they were misled will be returned to them through the settlement and, assuming it is less than 100%, a consideration of whether that reduction in the full value of the claims is warranted under the circumstances.  This determination cannot be made until notice is mailed, claims are submitted, and individuals who made payments have an opportunity to object or exclude themselves.  Only then will the Court have the information necessary to determine whether final approval is appropriate.  Allowing intervention does nothing but delay this process.  With every passing month, more putative class members' contact information becomes outdated and the likelihood increases that they will not recognize Convergent's name as someone they made a payment to in the past, and, therefore, do not submit a claim.

8

Plaintiff has ensured that the interests of the putative class will be adequately represented and that Convergent will be unable to engage in bad faith conduct during the settlement process. The Court has broad powers under Rule 23(d) to conduct the action, and the Putative Intervenors fail to show that they will make a meaningful contribution to it.

**B.    An intervening change in controlling law could jeopardize the settlement.**

Putative Intervenors criticize Plaintiff for securing Convergent's agreement to offer $1 million in relief and notify millions of people across the nation of their rights with respect to attempts to collect stale debts, calling it a reverse auction.  While their counsel offers no evidence to support this claim (i.e., that Convergent "sought bids" from *them* beforehand), one thing is clear: they are all willing to jeopardize the first-ever class settlement to offer reimbursements of payments made on time-barred debt for their own benefit.

Consumer class action law took a serious hit last year, when the Supreme Court issued *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), which addressed Article III standing under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), a statute similar to the FDCPA.  The opinion was—to borrow its own phrase about the FCRA—"less than pellucid."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007) (hyphens in original).  Since then, courts have "grappled with the application of *Spokeo*" to claims involving statutory violations in the absence of monetary damages.  *Deschaaf v. Am. Valet & Limousine Inc.*, No. CV-16-03464-PHX-GMS, 2017 WL 610522, at *3 (D. Ariz. Feb. 15, 2017).

All it takes is one unfavorable decision by the Tenth Circuit, and this Court could be *compelled* to dismiss the entire action.  *Accord Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 279814, at *4 (E.D. Mich. Jan. 23, 2017) ("[g]iven the guidance in *Spokeo*, the Court is concerned about whether Plaintiffs (and the class they seek to represent) have suffered a 'concrete' injury," but ultimately concluding that preliminary approval should be granted); *Zink v. First*

*Niagara Bank, N.A.*, 206 F. Supp. 3d 810, 817–18 (W.D.N.Y. 2016) ("In my view, under the present state of the law the scales tip slightly (but only slightly) in favor of finding that plaintiff has Article III standing to pursue claims on behalf of himself and the class. However, the substantial possibility that a higher court might eventually rule otherwise, particularly when coupled with the other defenses potentially available to First Niagara, warrants the settlement agreement's significant reduction from full value of the class members' claims.").

The Putative Intervenors must be aware that the law in this area is changing by the month. Fewer than three weeks ago, the Supreme Court held that filing a proof of claim on an obviously time-barred debt in a Chapter 13 proceeding did not violate the FDCPA. *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1409 (2017). In the 5-3 decision, the high court was surprisingly reticent about assuming the premise that even *filing a lawsuit* on a time-barred debt violated the FDCPA—something practitioners have taken for granted for quite some time. *Id*. at 1413. Yet the Putative Intervenors are eager for the Court to reject the proposed settlement, even though it could mean that Convergent—in the face of an intervening change in controlling law—may not return to the negotiating table. The Putative Intervenors' involvement means a delay that could unduly prejudice the parties and ultimately leave the proposed class with nothing.

## V.   Conclusion

The Putative Intervenors' motions need not be granted. Their actual interest in the proposed settlement is minimal, and their ability to protect that interest is safeguarded by the features of Rule 23. The Putative Intervenors' motions should not be granted. Allowing them to clutter and delay this action in the pursuit of a fee award risks jeopardizing an unprecedented FDCPA recovery that will not only provide substantial monetary relief, but provide millions of individuals with the ability to learn about their rights with respect to time-barred debt.

WHEREFORE, Plaintiff requests this Court deny the pending motions to intervene.

Dated: June 2, 2017

Respectfully submitted,

s/  David N. McDevitt
David N. McDevitt (030761)
Russell S. Thompson, IV (029098)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
602-845-5969
866-317-2674 facsimile
dmcdevitt@consumerlawinfo.com
rthompson@consumerlawinfo.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on June 2, 2017, I electronically filed the foregoing Response to Motions to Intervene with the clerk of the U.S. District Court of Colorado, using the electronic case filing system of the court, which will send notification of such filing to all counsel of record, as follows:

Robbie Malone
Eugene Xerxes Martin
Robbie Malone, PLLC
8750 North Central Expressway, #1850
Dallas, TX 75231
rmalone@rmalonelaw.com
xmartin@rmalonelaw.com
*Attorneys for Defendants*
*Convergent Outsourcing, Inc.*
*and LVNV Funding, LLC*

Karen L. Kellett
KELLETT & BARTHOLOW PLLC
Texas Bar No. 11199520
11300 N. Central Expy., Ste. 301
Dallas, Texas 75243
Tel. (214) 696-9000
Fax (214) 696-9001
kkellett@kblawtx.com
*Attorney for Tamara Alexander*

David. J. Philipps
Mary E. Philipps
Philipps & Philipps, Ltd.
9760 South Roberts Road, Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@ aol.com
mephilipps@aol.com
*Attorneys for Christine Parmelee*

Brian R. Bromberg
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
(212) 248-7906
brian@bromberglawoffice.com
*Attorneys for Christine Parmelee*

Kelly D. Jones-Oregon Bar No. 074217
Kelly D. Jones, Attorney at Law
819 SE Morrison St., Suite 255
Portland, OR 97214
(503) 847-4329
Kellydonovanjones@gmail.com
*Attorneys for Jeremy Estrella*

Michael Fuller-Oregon Bar No. 093570
Olsen Daines PC
111 SW Fifth Ave., Suite 3150
Portland, OR 97204
(503) 201-4570
michaelfuller@gmail.com
*Attorneys for Jeremy Estrella*

s/ David McDevitt
David McDevitt