**IN THE UNITED STATES DISTRICT OF COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| Devonn Ross, on behalf of herself and all | § | |
| others similarly situated, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 1:16-CV-00825-PAG-KLM |
| | § | |
| Convergent Outsourcing, Inc., and LVNV | § | |
| Funding, LLC | § | |
|     *Defendants*. | § | |

## DEFENDANTS' OPPOSITION TO MOTION OF INTERVENE BY ANGEL COOLEY, JOINT MOTION TO INTERVENE BY JEREMY VANTUYL AND SUE E. GILL, AND MOTION TO INTERVENE BY MARY JORDAN

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Convergent Outsourcing, Inc. ("Convergent") and LVNV Funding, LLC ("LVNV") (collectively "Defendants"), and for their Response to the Motion to Intervene by Angel Cooley (Doc. 78), Joint Motion of Jeremy Vantyul and Sue E. Gill to Intervene (Doc. 80), and Motion to Intervene by Mary Jordan (Doc. 87), and state as follows:

### I. Introduction

1.      A year into this case, after the close of discovery and numerous settlement negotiations, Plaintiff and Convergent filed their Joint Motion for Conditional Certification and Preliminary Approval of Class Settlement. Doc. 56. The terms of the proposed settlement granted a full recovery of statutory damages, a $500,000.00 award in actual damages, and an award of fees and costs to be paid out of a separate fund, ensuring overruns will not diminish class recovery. *See id.*

2.      However, the parties' settlement did not occur in a vacuum. Plaintiff's claims, among others, stem from a Fifth Circuit decision holding that one area of Convergent's debt collection practices could be in violation of the FDCPA. *See Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016). This decision exposed Convergent to lawsuits in potentially all 50

states. This created a flood of litigation, with 18 individuals bringing state-wide class actions in twelve (12) states, four (4) of which have been resolved. *See* <u>Doc. 79</u> at 2, n.1. Naturally, Convergent sought relief and moved to stay proceedings in these cases pending preliminary approval of class settlement in this case.[1] Having their own state-wide class actions stayed, eight (8) of these non-parties ("Intervenors") moved to intervene.

3.    In a last-ditch effort, the Intervenors intend to create a series of state-wide class actions, whereby counsel for each Intervenor can recover a fee award under the FDCPA. It will be shown that a series of state-wide class actions is an unrealistic pipe dream directly in conflict with the procedures of class litigation. Because this is the only reason the non-parties are seeking intervention, this Court must dismiss the pending Motions to Intervene.

## II. Standard of Law

4.    An applicant may intervene as a matter of right under Fed. R. Civ. P. 24(a) if: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties. *Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996). The Tenth Circuit holds there is a "general presumption that representation is adequate

---

[1] *See Parmelee v. Convergent Outsourcing, Inc.,* Case No. 6:17-cv-06039, Doc. 43 ("Order Granting Motion to Stay"); *Alexander v. Convergent Outsourcing, Inc.*, Case No. 4:16-cv-03318, Doc. 40 ("Memorandum and Order entered Granting Opposed Motion to Extend Stay"); *Estrella v. Convergent Outsourcing, Inc.*, Case No. 3:17-cv-00117, Doc. 9 ("Order Granting Motion to Stay"); *Matthews v. Convergent Outsourcing, Inc.*, Case No. 0:16-cv-03924, Doc. 39 ("Oral Order Granting in Part and Denying in Part Motion to Stay"); *Gill v. Convergent Outsourcing, Inc. et al*, Docket No. 2:16-cv-01035, Doc. 40 ("Opinion and Order Granting Motion to Stay"); *Cooley v. Convergent Outsourcing, Inc. et al*, Case No.: 1:17-cv-03121, Doc. 36 ("Minute Order Grating Motion to Stay Proceedings Pending Certification of Nationwide Class"); *Vantuyl et al. v. Convergent Outsourcing Inc. et al.*, Case No.: 5:16-cv-00812, Doc. 32 ("Order Denying Plaintiff's Motion to Lift Stay).

when the objective of the applicant for intervention is identical to that of one of the parties." *San Juan County, Utah v. United States*, 503 F.3d 1163, 1204 (10th Cir. 2007) (internal quotations omitted) (emphasis omitted).

5.      Alternatively, under Fed. R. Civ. P. 24(b)(1)(B), on timely motion, a court may permit anyone to intervene who has a claim or defense that shares a common question of law or fact with the main action. *Id.* While permissive intervention lies in the court's discretion, the court is "required to consider whether the intervention will 'unduly delay or prejudice' the adjudication of the rights of existing litigants." *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005). Additionally, "a court's finding that existing parties adequately protect prospective Intervenors' interests will support a denial of permissive intervention." *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 249 (D.N.M. 2008) (citing *City of Stilwell, Oklahoma v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)).

## IV. Argument and Authorities

6.      The instant Motions to Intervene do not raise new arguments, nor do they offer support of legal authority pursuant to Local Rule 7.1(d). Insofar as they are supported by the arguments set forth in Docs. 63-64 & 72, Convergent hereby incorporates and re-alleges the applicable arguments from its responses to those motions set forth in Docs. 73 & 82.

### A. The Intervenors seek to create an unworkable series of statewide class actions, disregarding the norms and conventions of class-action litigation.

7.      The Intervenors all argue that Convergent is improperly "broadening the class definition" from a state-wide class to a nationwide one. *See*, *e.g.*, Doc. 63 at 10. Each Intervenor complains that if a nationwide class is certified, this will result in a lower recovery per member than in each respective statewide class action. *See*, *e.g.*, Doc 72 at 2 ("the proposed settlement is unfair, and will result in a woefully inadequate recovery . . . ."). Taking the Intervenors' arguments to their

logical conclusion, it appears that each Intervenor wishes to represent his or her own class in a series of at least eight (8) state-wide class actions. *See* <u>Doc. 63</u> at 9 (*citing Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997)) ("there was nothing in the statute that would prohibit a series of state-wide class actions . . . ."). Assuming this Court may not grant injunctive relief against parallel litigation until approval of the class settlement, it is not farfetched to imagine consumer lawyers bringing putative statewide claims in *all 50 states*: they have already done so in nine (9) states and 13 districts. *See* <u>Doc. 78</u> at 2, n.1.

8.      The Intervenors cite *Mace* to argue "there is no authority for requiring the broadest possible class," and that a series of state-wide class actions is warranted. *See*, *e.g.*, <u>Doc. 63</u> at 9. *Mace* is completely distinguishable, as it involved debt collector losing one state-wide class action and continuing to commit the same practices in violation of the FDCPA, only to face a subsequent class action on a separate set of facts. *See Mace*, 109 F.3d at 341. In *Daugherty*, the Fifth Circuit held Convergent's collection letter could violate the FDCPA, exposing it to numerous suits at once. *Daugherty*, 836 F.3d 507. Convergent has revised its practices, and now seeks to remedy its alleged violations with a global settlement. Convergent is not relying on statutory bar against a series of state-wide class actions, as found in the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(B), but rather on the procedures and jurisprudence of class-action litigation.

9.      Unfortunately for the Intervenors—and any attorney hoping to take the lead as class counsel—Plaintiff Devonn Ross was the first to file her Complaint. <u>Doc. 1</u> (filed April 12, 2016). Because Ms. Ross was the "first-to-file," she is entitled to pursue her claims without having to compete against eleven (11) statewide class actions in nine (9) states. *See*, *e.g.*, *Roe v. Gray*, 165 F. Supp. 2d 1164, 1168 (D. Colo. 2001) ("under the first-to-file rule, a court 'which first acquired jurisdiction should be the one to try the lawsuit.'"); *Baldozier v. Am. Family Mut. Ins. Co.*, CIVA04-cv-02174-WYD-CBS, 2005 WL 3499953, at *2 (D. Colo. Dec. 21, 2005) ("the first-to-

file rules provides that the court where jurisdiction first attaches should make the determination of the appropriate venue to decide the case, and the second court will decline to act until proceedings in the first court terminate."). This Court is also entitled to adjudicate Mr. Ross's claims without risking conflicting results, wasting judicial resources,[2] or being dragged into a de facto race with other districts to grant final approval of a class settlement first.[3] The matter at hand is not the sort of complex litigation that warrants unique findings of fact in each state: it involves the same alleged unlawful conduct and a single federal statute. Tying up eleven (11) federal courts with class actions, when common issues of law and fact clearly predominate over a national class, is an affront to the very reason class actions exist: to promote judicial efficiency and reach the largest number of claimants.

10.     Each Intervenor now intends to undermine the policies of class-action litigation so they may bring a "series of state-wide class actions" against Convergent. *See*, *e.g.*, Doc. 62 at 8. The Intervenors are not concerned with an "impairment" to their individual claims: they have acknowledged they can opt out, although they contend "opting out is not the answer." It is also

---

[2] "Class actions serve three principal functions: (1) facilitating judicial economy by avoiding multiple suits on the same subject matter; "(2) providing a feasible means for asserting the rights of those who 'would have no realistic day in court if a class action were not available;' and (3) deterring inconsistent results and assuring a uniform, singular determination of rights and liabilities." *Armstrong v. Powell*, 230 F.R.D. 661, 682 (W.D. Okla. 2005); *see also Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985).

[3] It is clear that if the Intervenors are all allowed to pursue their own statewide class actions, the first to certify a class will seek antisuit injunctions against any competing class action that threatens their own case, including the instant matter. "Even without an injunction, the issuance of a judgment based on the settlement would unless vacated extinguish further litigation by those bound by the judgment by operation of res judicata. But as the citations indicate, injunctions against other litigation are occasionally issued to terminate parallel litigation more quickly and securely than would be the case if the defendant had to interpose a res judicata defense in separate suits." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 782 (7th Cir. 2004) (Posner, J.) (citations omitted). The first party to obtain a final order approving class settlement can—and likely will—register her judgment pursuant to 28 U.S.C. § 1963 ("[a] judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner").

---

doubtful whether the Intervenors are all that concerned with an "impairment" to their possible incentive awards as class representatives: typically, incentive awards in FDCPA class actions are nominal. *See*, *e.g.*, *Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141, 161 (E.D. Pa. 2016) (granting incentive awards to the named plaintiffs in the amount of $1,000). The only remaining concern the Intervenors could possibly have is the loss of potentially millions of dollars in attorney fees and costs. It is not proper to tie up 13 district courts with 14 cases and circumvent the policies of class-action litigation and the FDCPA, merely to chase the prospect of large fee awards. As such, this Court must deny the pending Motions to Intervene, and it must not allow the applicants to intervene merely to object to the fairness of the proposed settlement in the instant case.

**B. The Intervenors' Motions are redundant, as the only legal interests they seek to protect are already protected by the procedures of this Court.**

11.     To put it succinctly, the only issue the eight (8) motions to intervene raise is the fairness of the proposed class settlement.[4] Any other issues they raise, such as the "inadequacy" of the Plaintiff as class representative, or the need to participate in discovery leading up to class settlement, are all incidental to their main concern: the terms of the proposed settlement. Doc. 56. Courts in the Tenth Circuit and elsewhere have consistently denied motions to intervene from

---

[4] Intervenor Parmelee states her interest in the instant matter is tied to the allegedly "inadequate settlement." Doc. 62 at ("disposing this action—via an inadequate, nationwide class settlement—may, as a practical matter, impair or impede her ability to protect [Parmelee's] interest . . . and the parties are attempting to foreclose her ability to pursue her claims in New York"). Intervenor Alexander states her interest is in contesting the fairness of the proposed settlement. Doc. 63 at 7 ("contest the fairness of, and conduct discovery concerning the fairness of, the proposed settlement in this case"). Intervenor Estrella states his interest is tied to the amount of compensation and release provided by the proposed settlement. Doc. 64 at 3 ("by agreeing to this settlement that does not provide adequate compensation for, and will release all claims related to, the substantial harm Convergent caused to millions of consumers across the country, Estrella believes that [Ross] and her counsel do not adequately represent the class."). Intervenor Matthews states her interest is in contesting the fairness of the settlement. Doc. 72 at 4 ("to contest the fairness of, and conduct discovery concerning the fairness of, the proposed settlement in this case."). The instant motions to intervene incorporate these arguments and bring no new arguments. *See* Doc. 78, 80, & 87.

potential class members when their stated interest is merely to object to the terms of a proposed class settlement, as that interest is already adequately protected by Rule 23(e). *See, e.g., In re Motor Fuel Temperature Sales Practices Litig.*, 07-MD-1840-KHV, 2011 WL 5331678, at *3 (D. Kan. 2011) (denying intervention of right because the intervenors "can protect their interests by objecting or opting out of the settlement"); *Davis v. J.P. Morgan Chase & Co.*, 775 F.Supp.2d 601, 605–06 (W.D.N.Y. 2011) (same); *Doe v. Cin–Lan, Inc.*, No. 08–CV–12719, 2011 WL 37970, at * *2–4 (E.D. Mich. 2011) (same); *see also UAW v. Gen. Motors Corp.*, No. 05–CV–73991–DT, 2006 WL 334283, at *5 (E.D. Mich. 2006) (denying permissive intervention where proposed intervenors can assert points of view by filing objections to proposed settlement).

12.      The Intervenors must "demonstrate that the disposition of this action may as a practical matter impair or impede their ability to protect their interest." *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001). The rules of procedure already protect the Intervenors' interests. Under Fed. R. Civ. P. 23(e), class claims may only be settled after the presiding court holds a hearing to determine fairness, reasonableness, and adequacy. *Id*. The procedures of Rule 23 are in place to prevent the exact concerns the Intervenor's raise in their Motions: deterring collusion between the parties, helping to guarantee adequate consideration of the class interests, enabling class members to protect their own interests by allowing them to pursue their own suits, and discouraging the use of class action devices to secure unjust private settlements. *See O'Neill v. Beneficial Mut. Savings Bank*, Case No. Civ.A-97-2514, 1997 WL 587353, at *1 (E.D. Pa. 1997). The Intervenors have made no qualms about the fact they only seek to intervene to object to the terms of the settlement, essentially seeking two bites at the apples: one opportunity to object at the fairness hearing, and numerous opportunities to object throughout the settlement process. Intervention should not be permitted merely to undermine the settlement process. For the foregoing reasons, the pending Motions to Intervene must be denied.

**C.  Plaintiff Ross is an adequate representative of the putative class.**

13.     The Intervenors have repeatedly characterized the instant matter as a "reverse auction" (*e.g.* <u>Doc. 72</u> at 2), and they have repeatedly called into question the adequacy of the David N. McDevitt as class counsel, even going so far as to characterize him as "the most ineffectual [of] class lawyers . . . ." *See id.* at 12 (citing *Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)). This, despite the fact Mr. McDevitt won the case that paved the way for these class actions in the first place. *See Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016). The Intervenors' briefs repeatedly hint at collusion and bandy about the term "reverse auction," but they bring no evidence justifying intervention for want of adequate representation. The parties have not engaged in any collusion whatsoever, and this will be apparent to the Court as the settlement process continues.

14.     An applicant seeking intervention of right must show her interest is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). "An applicant for intervention also bears the burden of showing inadequate representation." *Holland v. Williams*, 1:16-CV-00138-RM-CBS, 2016 WL 7675315, at *6 (D. Colo. 2016) (internal citation omitted). "[A] presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation." *Id.* (internal citation omitted). The Intervenors claim "the inadequate representation element of Rule 24(a)(2) . . .  presents a minimal burden," and they must "show only the possibility that representation may be inadequate." *See*, *e.g.*, <u>Doc. 72</u> at 12 (citing *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1200 (10th Cir. 2010)). This quotation of *WildEarth* misrepresents the law. Demonstrating inadequacy of representation is only a "minimal burden" when the intervenor is a private individual intervening in a government agency's protection of that individual's interests. *See e.g., Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir.2002); *Clinton*, 255 F.3d at 1256 (10th Cir. 2001)

(inadequate representation prong satisfied where government was "obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor").

15.    "These cases, however, are inapplicable where the objective of the applicant for intervention is identical to that of one of the parties." *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Com'n*, 787 F.3d 1068, 1072 (10th Cir. 2015) (internal quotations omitted). "Under such circumstances, [the Tenth Circuit presumes] representation is adequate." *Id*. To overcome this presumption, an intervenor must make "a concrete showing of circumstances" that representation is inadequate. *Id*. at 1073. "These circumstances include a showing that there is collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed to represent the applicant's interest." *Id*. (citing *Sanguine, Ltd. v. U.S. Dep't of Interior,* 736 F.2d 1416, 1419 (10th Cir. 1984)) (internal quotation marks omitted).

16.    It is apparent that the Plaintiff's objectives in this case are identical to the Intervenor's: recovery on behalf of the class. Therefore, Plaintiff and her counsel are entitled to a presumption of adequate representation. *Tri-State*, 787 F.3d at 1072. For this reason, it also follows that Plaintiff and her counsel meet the first *Tri-State* "adequate representation" factor: Plaintiff's interest is not adverse to the Intervenors. *Id*. at 1073. The Intervenors challenge the adequacy of representation solely based on the proposed settlement. *E.g.*, Doc. 62 at 10-11. However, this is not grounds to challenge adequate representation. *Sanguine, Ltd. v. U.S. Dep't of Interior,* 736 F.2d 1416, 1419 (10th Cir. 1984)).

17.    The Intervenors point to the "timing of the proposed settlement agreement and the motion for class certification shortly after a sudden motion to seek leave to file a second amended complaint asserting a nationwide class for the very first time and the lack of any formal discovery

and any hard evidence to support the class size, damages assessments, the actual net worth of Convergent, or the requisite Rule 23 factors" as concerns they harbor about the adequacy of representation by the existing parties. *See*, *e.g.*, Doc. 72 at 12. None of these concerns are concrete. *See Tri-State*, 787 F.3d at 1073. The fact that Ms. Ross amended her complaint and expanded the class definition to "All persons in the United States" (Doc. 51 at 8, ¶ 57) does not indicate collusion. Given the common issues of law and fact extending over the class members in all 50 states, a nationwide class was inevitable. The class can be grouped together because they are capable of "advancing] the same factual and legal arguments." *Mace*, 109 F.3d at 341. The Plaintiff is the master of her complaint, and it is her legal right to engineer her claim as she sees fit. *Molycorp Minerals, LLC v. Mingus Constructors, Inc.*, 13-CV-02141-REB-MJW, 2013 WL 6661636, at *2 (D. Colo. 2013). Amending a complaint to grant a broader release of liability is not collusion: it is the Plaintiff's full exercise of her legal rights in the aim of reaching a settlement.

18.     The terms of the settlement, on its face, demonstrate a lack of collusion. Convergent has agreed to pay the maximum amount of statutory damages and pay an additional award of actual damages. Doc. 56 at 16-17. As Mr. McDevitt points out in his declaration, the proposed settlement in the instant case may be the "first FDCPA class action settlement where some or all of payments on time-barred debts was returned to the consumers." Doc. 56-2 at 5, ¶ 31. Mr. McDevitt affirmed, under penalty of perjury, that the terms of the Joint Motion for Preliminary Approval was negotiated fairly and honestly. *See* Doc. 56-2 at 4, ¶ 26-27. The Intervenors complain about the proposed "claims made" fund (Doc. 72 at 13), but ignore the benefits of this type of distribution, such as shifting available funds to class members who wish to participate, as well as lowering costs. They also ignore the benefits of a nationwide class: for instance, providing notice to class members of all 50 states, affording them the opportunity to opt out and pursue their individual claims, or providing recovery in states where no putative statewide class action has been filed The

Intervenors mistakenly state Convergent "failed to disclose the existence of at least nine other statewide class actions." This is untrue. *See* <u>Doc. 79</u> at 2, n.1. Because the parties are entitled to a presumption of adequate representation, and the Intervenors make no concrete showing of circumstances indicating inadequate representation, the Intervenors must be denied intervention pursuant to Rule 24(a)(2).

### D. Because The Intervenors Are Not Entitled to Intervention of Right, They Are Not Entitled to Participate in Discovery.

19.     The Intervenors argue they should be permitted to intervene to "conduct discovery concerning the fairness of . . . the proposed settlement in this case." <u>Doc. 72</u> at 1. They cite no authority showing that an intent to participate in discovery is a valid reason supporting intervention. In fact, this reason *cuts against* permissive intervention. *See Tri-State*, 787 F.3d at 1075 (affirming denial of intervention where it would burden the existing parties with discovery). A case on point out of the Tenth Circuit shows that requesting to "conduct discovery" is not a sufficient reason to support intervention. *See In re Motor Fuel Temperature Sales Practices Litig.*, 07-MD-1840-KHV, 2011 WL 5331678, at *2 (D. Kan. Nov. 4, 2011). In *Motor Fuel*, the parties reached preliminary approval of a class settlement when purported members of a subclass from another state (New Mexico) sought to intervene "to challenge certain aspects of the proposed settlement" and to "pursue discovery regarding whether the named representative of the New Mexico subclass . . . had adequately represented the interest of that subclass." *Id.* at *1-2. The New Mexico intervenors objected that a state-law cause of action (the New Mexico Unfair Trade Practices Act, N.M. Stat. § 57-12-10(B)), entitled subclass members to recovery without proof of damages. *Id.* The New Mexico intervenors argued that, because the proposed settlement did not provide additional monetary relief pursuant to the state law provision, the settlement was unfair.

20.     The court denied intervention, finding that the New Mexico intervenors failed to meet

several elements of Rule 24(a)(2). *Motor Fuel*, 2011 WL 5331678 at *2. First, the court found the intervenors "have not shown the third requirement, i.e. that their interest may as a practical matter be impaired or impeded, because they can protect their interest by opting out of the settlement." *Id.* (citing *Doe v. Cin-Lan, Inc.*, 08-CV-12719, 2011 WL 37970, at *3 (E.D. Mich. Jan. 5, 2011)). The court also found the New Mexico intervenors did not meet "the fourth requirement, i.e. that their interest is not adequately represented by existing parties," as they "point to no fact which show that [the class representative] has colluded with an opposing party, [etc.]." *Motor Fuel*, 2011 WL 5331678 at *2. After finding that the parties were not entitled to intervention of right, the court found they were not entitled to "intervene to pursue discovery regarding adequate representation" for the same reasons. *Id.* The court also found the same reasons were grounds for denying permissive intervention. *Id.* Where the court in *Motor Fuel* found intervention of right, permissive intervention, and intervention to pursue discovery should all be denied because the intervenors could opt out of the class settlement and they failed to point out any facts showing collusion in reaching a settlement agreement, this Court should also find intervention must denied in the instant case for the exact same reasons. Therefore, the pending Motions to Intervene must be denied.

### E. Permissive Intervention Must Be Denied as The Intervenors Only Reason For Intervention Is To Cause Undue Delay in The Settlement Negotiations.

21.     The only reason the Intervenors give to support their motions is to object to the proposed settlement. *See supra* at n.4. Under Fed. R. Civ. P. 24(b)(3), "In exercising its discretion [to grant permissive intervention], the court *must* consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* (emphasis added); *see also DeJulius*, 429 F.3d at 943 (noting that district courts are required to consider undue prejudice or delay in deciding whether to grant permissive intervention). "While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective

intervenors' interests will support a denial of permissive intervention." *XTO Energy, Inc. v. ATD, LLC*, CV 14-1021 JB/SCY, 2016 WL 3148399, at *16 (D.N.M. 2016) (citing *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)).

22.     In *XTO Energy*, an oil company sued purported indemnitors for failing to defend it against several personal injury complaints. *Id.* at *5-6. The plaintiffs in the personal injury actions sought to intervene, arguing that the oil company sought to discount their damages under a comparative liability theory. *Id.* at *6. The plaintiffs argued intervention would not cause undue delay because the litigation was "still in its nascency," and that interests were contingent upon the breach of contract action between XTO and its indemnitors. *Id.* at *6. The court denied intervention because the existing parties and the intervenors shared some questions of law and fact, the existing parties adequately represented the intervenor's interests, the intervenors were raising new issues of law not before the court, and intervention would unduly delay proceedings by not adding "value to the existing issues before the [c]ourt." *Id.* at *20-21.

23.     In the instant case, the Intervenors and the Plaintiff share the same questions of fact, they share the same questions of law with respect to the FDCPA claims, and different questions of law only exist to the extent the Intervenors seek to raise issues of state-law debt collection statutes. These state-law causes of action will only increase recovery by a nominal amount if any, but will complicate the settlement process without adding "value to the existing issues." *Id.* at *21. Because the Intervenors' interests are protected by their ability to opt out, and because they have pointed to no concrete facts indicating inadequate representation, it follows that permitting intervention will only frustrate settlement negotiations and cause undue delay. For these reasons, permissive intervention pursuant to Rule 24(b)(1)(B) must be denied.

## V.  Conclusion

24.     The Intervenors have failed to establish the necessary elements of intervention pursuant to

Rule 24(a)(2). Equally, they have failed to show that Plaintiff is an inadequate representative of their interests, so under Tenth Circuit precedent, permissive intervention must be denied. Permissive intervention must also be denied because it will cause an undue delay. Intervenors repeatedly object to the terms of the Joint Motion for Preliminary Approval, but this is not the proper forum to object to the fairness of the settlement: the proper time for these objections is the fairness hearing. For the foregoing reasons, the pending Motions to Intervene must be denied.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that this Court deny the Motions to Intervene, and for any other relief, at law or equity, so justly entitled.

Respectfully submitted,

**MALONE AKERLY MARTIN PLLC**

*/s/* Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@mamlaw.com
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@mamlaw.com
**MALONE AKERLY MARTIN PLLC**
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
T: 214-346-2630 | F: 214-346-2631

***COUNSEL FOR DEFENDANTS
CONVERGENT OUTSOURCING, INC.
AND LVNV FUNDING, LLC***

[Certificate of Service on Next Page]

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Defendants' Response to the Motion to Intervene has been served **via CM/ECF** to all known counsel of record on this 21st day of July, 2017 to:

*Counsel for Plaintiff*
Russell S. Thompson, IV
David McDevitt
Thompson Consumer Law Group, PPLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
P: 602-388-8898 | F: 866-317-2674
rthompson@consumerlawinfo.com
dmcdevitt@consumerlawinfo.com

*Counsel for Christine Parmelee*
David J. Philipps
Mary E. Philipps
Philipps & Philipps. LTd.
9760 South Roverts Road, Suite One
Palos Hills, Illinois 60465
P: 708-974-2900 | F: 708-974-2907
davephilipps@aol.com
mephilipps@aol.com

*Counsel for Jeremy Estrella*
Kelly D. Jones
819 SE Morrison St, Suite 255
Portland, OR 97214
P: 503-847-4329
Kellydonovanjones@gmail.com

*Counsel for Theresa Matthews*
Mark Leon Vavreck
Gonko & Vavreck, PLLC
401 North Third Street
Suite 600
Minneapolis, MN 55401
(612) 659-9500
Fax: (612) 659-9220
mvavreck@cgmvlaw.com

*Counsel for Christine Parmelee*
Brian R. Bromberg
Bromberg Law Office, P.C.
236 Broadway, 21st Floor
New York, NY 1004
P: 212-248-7906
brian@bromberglawoffice.com

*Counsel for Tamara Alexander*
Karen L. Kellett
Kellett & Bartholow PLLC
11300 N. Central Expy., Ste. 301
Dallas, TX 75243
kkellett@kblawtxcom

/s/ Robbie Malone
ROBBIE MALONE