**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-00825-PAB-KLM

DEVONN ROSS, *on behalf of herself*
*and all others similarly situated*,

      Plaintiff,

v.

CONVERGENT OUTSOURCING, INC. and
LVNV FUNDING, LLC,

      Defendants.

## RENEWED REPLY OF INTERVENORS IN SUPPORT OF MOTIONS TO INTERVENE

      Intervenors, Angel Cooley, Tamara Alexander, Jeremy Estrella, Sue Gill, Mary Jordan, Theresa Matthews, Christine Parmelee, and Jeremy Vantuyl reply as follows in support of their motions to intervene. The responses to the motions to intervene filed by Plaintiff and Defendants simply illustrate why intervention is necessary.

## I.    IT IS NOT APPROPRIATE FOR PLAINTIFF AND DEFENDANTS TO BROADEN THE CLASS TO DIMINISH THE CLASS MEMBERS' RECOVERY

      The FDCPA does not require that classes be as broad as possible, or limit recovery based on the filing of multiple class actions. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). The FDCPA does not contain the language found in some other statutes, such as the Truth in Lending Act, 15 U.S.C. §1640 ("TILA"), limiting the statutory damages for "any class action or series of class actions arising out of the same failure to comply by the same creditor".

1

As a result, where multiple cases are filed in different states, it is not appropriate to broaden the class in one state to encompass all, without adjustment of the damages to account for the fact that the total can exceed 1% or $500,000. Typically, the cases are either left as they are or significantly more money is paid. It is thus incorrect for Convergent and LVNV to state that defendants are paying the "maximum" statutory damages available against them.

Plaintiff, in the response to the Matthews' amended motion to intervene (Dkt. 81, at p. 2), claims that although the FDCPA does not contain the same language as TILA limiting liability in the case of a "series of class actions," the legislative history of the FDCPA suggests that such a limitation should be imported. This is a peculiar position for any plaintiff's counsel to take.

The short answer is that the text of the FDCPA contains no such limitation. "And while it is of course our job to apply faithfully the law Congress has written, it is never our job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done had it faced a question that, on everyone's account, it never faced. . . . [We] will presume more modestly instead 'that [the] legislature says ... what it means and means ... what it says.' *Dodd v. United States*, 545 U.S. 353, 357 (2005) . . . ." *Henson v. Santander Consumer USA Inc*., --- S.Ct. ----, 2017 WL 2507342, *6 (June 12, 2017).

Some consumer protection statutes, such as TILA and the Electronic Funds Transfer Act, 15 U.S.C. §1693m, contain the "series" limitation. In the case of TILA, but not EFTA, Congress increased the "cap" to $1 million instead of $500,000, and provided additional damages for certain types of violations, such as the Home Ownership and Equity Protection provisions of TILA. Others, such as the FDCPA, the Real Estate Settlement Procedures Act, 12 U.S.C. §2605,

2

and the Equal Credit Opportunity Act, 15 U.S.C. §1691e, do not contain the "series" limitation. Still other statutes do not have a cap at all, *e.g.*, The Fair Credit Reporting Act, 15 U.S.C. §1681n. Courts cannot rewrite one of these damage provisions to make it look like one of the others. If, as plaintiff claims, the "series" language should be imported into the FDCPA, why not increase the "cap" to $1 million? Or perhaps the $500,000 FDCPA cap should be interpreted as meaning $500,000 in 1977 dollars?

Moreover, Plaintiff and Defendants ignore the fact that by broadening the class to over 3.7 million members, they are ***reducing*** the recovery to the class as originally proposed in Plaintiff's own case. The proposed settlement is affirmatively injurious to the class Plaintiff originally undertook to represent.

Defendants' statement that "there are also no restrictions against nationwide classes" (Dkt. 73, at p. 7) does not suggest that a court should certify a nationwide class when doing so results in a small recovery per class member and injures the class. A broadening of a class which "ensured that none could recover much" is not permissible or fair. *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 882 (7th Cir. 2000).

Finally, in other lawsuits pending against Defendant Convergent in other jurisdictions, there are other debt collectors—entities with substantial net worths—who are co-defendants, who will have paid no consideration to resolve these lawsuits. These other debt collectors are liable to the class members on whose behalf Convergent sent the misleading form debt collection letters to collect time-barred debts, *see Janetos v. Fulton, Friedman & Gullace*, 825 F.3d 317, 325-326 (7th Cir. 2016), yet they are being given a free ride on this inadequate settlement. Their

3

net worths should been disclosed to the Court and taken into account as to whether the settlement is fair to consumers on whose behalf Convergent sent the illegal collection letters.

## II.   IT IS NOT APPROPRIATE FOR PLAINTIFF AND DEFENDANTS TO USE A WEAKER CASE TO BAR STRONGER CASES

It is totally inappropriate for Defendants to oppose intervention by arguing that "the cases that these suits rely on, in particular *McMahon* from the Seventh Circuit and *Daugherty* from the Fifth Circuit, are not binding on the courts in the Tenth Circuit." (Def. Opp., p. 4 of 15) One of the cases which Defendants are seeking to wipe out is pending in the Fifth Circuit, two are in the Seventh Circuit, and a third is in the Sixth Circuit. The Seventh, Fifth and Sixth Circuits have upheld the validity of identical claims, s*ee Pantoja v. Portfolio Recovery Assocs.*, 852 F.3d 679 (7th Cir. 2017); *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 513 (5th Cir. 2016); *Buchanan v. Northland Group,* 776 F.3d 393, 397 (6th Cir. 2015); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014). What Plaintiff and Defendants have done is agree to use a case pending where the law is not resolved to eliminate the rights of class members whose right to relief is clear, and to cite the lack of authority in the forum they voluntarily selected as a reason for taking less money.

Similarly, Plaintiff argues that the actions in the other circuits have not yet been certified. But similar actions have been ordered to be certified in the Seventh Circuit. *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015) (reversing denial of class certification). Again, Plaintiff and Defendants have used a case pending where the law is unresolved to eliminate the rights of class members whose right to relief is clear, citing the lack of clarity to justify doing so.

Likewise, Plaintiff argues that the Tenth Circuit may decide that *Spokeo, Inc. v. Robins*,

136 S. Ct. 1540, 1547 (2016), bars FDCPA claims for statutory damages. But the Seventh Circuit

has held that informational injury -- deprivation of a right to receive truthful information—is

sufficient to satisfy *Spokeo. Carlson v. United States,* 837 F.3d 753 (7th Cir. 2016), citing *Spokeo*

and its discussion of *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989), and

*Federal Election Comm'n v. Akins,* 524 U.S. 11, 20–25 (1998). Courts in the Seventh Circuit

have repeatedly found standing in FDCPA statutory damage claims.[1] So have many courts

outside the Seventh Circuit.[2]

---

[1] *Dunham v. Robert Crane & Assocs., LLC*, No. 1:16-cv-02100-SEB-MPB, 2017 WL 2664287, *3-5 (S.D. Ind. June 20, 2017)**;** *Smith v. GC Servs*, No.  1-16-cv-1897-RLY-DML, 2017 WL 2629476, at *2 (S.D. Ind. June 19, 2107); *Caprel v. Specialized Loan Servicing, Inc.,* No. 15 C 09145, 2017 WL 1739919, at *3 (N.D. Ill. May 4, 2017); *Haddad v. Midland Funding, LLC*, No. 16 C 3942, 2017 WL 1550187, at *3 (N.D. Ill. May 1, 2017); *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017);; *Long v. Fenton & McGarvey Law Firm P.S.C.*, No. 1:15-cv-01924-LJM-DKL, 2016 WL 7179367, at *3 (S.D. Ind. Dec. 9, 2016); *Bowse v. Portfolio Recovery Associates, LLC*, No. 15 C 4037, 2016 WL 6476545 (N.D. Ill. Nov. 2, 2016);, 2016 WL 6833932 (N.D. Ill. Nov. 21, 2016); *Evans v. Portfolio Recovery Associates, LLC*, No. 15 C 4498, 2016 WL 6833930 (N.D. Ill. Nov. 20, 2016); *Hayes v. Convergent Healthcare Recoveries, Inc.,* No. 14-1467, 2016 WL 5867818 (C.D. Ill. Oct. 7, 2016); ); *Saenz v. Buckeye Check Cashing of Illinois*, No. 16 CV 6052, 2016 WL 5080747 (N.D. Ill. Sept. 20, 2016); *Mogg v. Jacobs*, No. 15-cv-1142-JPG-DGW, 2016 W 4395899 (S.D. Ill. Aug. 18, 2016); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 WL 4264967 (N.D. Ill. Aug. 11, 2016); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467 (N.D. Ill. July 11, 2016);  *George v. Wright, Lerch & Litow, LLP Attorneys at Law*, 2016 WL 6963990 (S.D. Ind. Nov. 29, 2016); *Everett v. Fin. Recovery Servs., Inc.*, 2016 WL 6948052 (S.D. Ind. Nov. 28, 2016);  *Paz v. Portfolio Recovery Associates, LLC*, No. 15 C 5073, 2016 WL 6833932 (N.D. Ill. Nov. 21, 2016).

[2] *Sayles v. Advanced Recovery Sys. Inc.*, No. 16-60640, 2017 WL 2872343 (5th Cir. July 6, 2017); *Church v. Accretive Health, Inc*., 654 Fed. Appx. 990 (11th Cir. 2016); *Blaha v. First Nat'l Collection Bureau, Inc.*, 2016 U.S. Dist. LEXIS 157575 (D.N.J. Nov. 10, 2016); *Daubert v. NRA Group, LLC*, 2016 WL 4245560 (M.D. Pa. Aug. 11, 2016); *Zirogiannis v. Seterus, Inc.*, 2:15-cv-05884-SJF-ARL, 2016 WL 7410541 (E.D.N.Y Nov. 28, 2016); *Allah Mensah v. Law*

In short, Plaintiff repeatedly argues that because she chose to file in a forum where the law is less favorable or well developed than where the proposed intervenors filed, intervenors and other class members should suffer loss of their rights for little or no consideration. This is a species of "reverse auction," and the antithesis of adequate representation.[3]

## III.    THE REQUIREMENTS OF RULE 23(b)(3) HAVE NOT BEEN MET

Plaintiff and Defendant Convergent claim that the proposed class meets the requirements of Fed.R.Civ.P. 23(b)(3) (Dkt. 56, at pp. 13-14), but have utterly failed to inform this Court of matters pertinent to its inquiry. Specifically, Rule 23(b)(3) requires that the court find that "questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Matters pertinent to making these finding include "(B) the extent and nature of any litigation concerning the controversy already begun by or against

---

*Office of Patrick M. Connelly, P.C.*, 2016 WL 6803775 (D. Md. Nov. 17, 2016); *Munoz v. California Bus. Bureau, Inc.*, 2016 WL 6517655 (E.D. Cal. Nov. 1, 2016); *Hill v. Accounts Receivable Servs., LLC*, 2016 WL 6462119 (D. Minn. Oct. 31, 2016); *Macy v. GC Servs. Ltd. P'ship*, 2016 WL 5661525 (W.D. Ky. Sept. 29, 2016); *Linehan v. Allianceone Receivables Mgmt., Inc.*, 2016 WL 4765839 (W.D. Wash. Sept. 13, 2016); *Carrington Mortg. Servs., LLC v. Dye*, 2016 WL 4766484 (M.D. Ga. Sept. 12, 2016); *Sayles v. Advanced Recovery Sys., Inc.*, 2016 WL 4522822 (S.D. Miss. Aug. 26, 2016); *Hall v. Global Credit & Collection Corp.*, 2016 WL 4441868 (M.D. Fla. Aug. 23, 2016); *Prindle v. Carrington Mortg. Servs., LLC*, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016); *McCamis v. Servis One, Inc.*, 2016 WL 4063403 (M.D. Fla. July 29, 2016); *In re Robinson*, 554 B.R. 800 (Bankr. W.D. La. 2016); *Dickens v. GC Servs. Ltd. P'ship*, 2016 WL 3917530 (M.D.Fla. July 20, 2016); *Tourgeman v. Collins Fin. Servs., Inc.*, 2016 WL 3919633 (S.D. Cal. June 16, 2016).

[3]  In *Vantuyl v. Convergent Outsourcing and Galaxy International Purchasing*, pending in Oklahoma, *i.e,* also in the Tenth Circuit, Defendants Convergent and Galaxy induced the district court to stay the matter on January 11, 2017, so that the parties could engage in mediation or settlement negotiations. Defendants thereafter made no serious attempt to do either, apparently because Convergent got the reverse auction deal it was looking for from Plaintiff Ross.

class members; and (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum", *see* Fed.R.Civ.P. 23(b)(3)(B) and (C).

The parties, Convergent in particular, have utterly failed to inform this Court of the multitude of case pending against it in other jurisdictions, not ONCE mentioning any of those cases in their joint motion to certify the settlement class and preliminarily approve the settlement, with Defendant Convergent all the while using the possibility of this settlement to stay the other cases against it. The parties failure to disclose the other pending cases violates the spirit if not the letter of D.C.COLO.LCivR 3.2. Moreover, as discussed above in further detail in Section II, *infra*, concentrating this litigation in a district court in the Tenth Circuit, rather than a court in the Fifth, Sixth, or Seventh Circuits, where liability is more certain, is certainly less desirable.[4]

## IV.    THE RECOVERY PER CAPITA IS SO SMALL AS TO DISSUADE PARTICIPATION

By broadening the class, Plaintiff proposes distributing $500,000 statutory damages to over 3.7 million persons, or less than 14 cents per person. In order for a class member to recover $14, participation could not exceed one percent. Since historically, 10% is a typical participation rate for FDCPA class actions, what Plaintiff has done is expand the class to the point where class members will get virtually nothing and be dissuaded from participating, *see. e.g. Gallego v. Northland Group*, 814 F.3d 123, 129-130 (2nd Cir. 2016) (upholding the denial of certification

---

[4]  None of the intervenors, however, believe that it is appropriate to concentrate this litigation in any forum, so long as the expanded class definition remains operative.  Each intervenor seeks to represent a much narrower class, which would result in greater possible damages to the members of the classes they seek to represent.

of a settlement class, where each class member would receive 16.5 cents if all the class members claimed in and noting that the amount would still be "trivial' even if only 5% of the class claimed in; also noting that an expected low participation rate of 5% "is hardly a selling point for a proposed classwide settlement"). While "a minimal recovery per class member" may not preclude approval (Def.Mem., p. 5 of 15), this goes far beyond a naturally-occurring minimal recovery, for example, when the defendant simply lacks money. This case involves a deliberate attempt to create a minimal recovery where doing so is harmful to the class and completely unnecessary.

In fact, in the cases brought by intervenors where class size is known for the classes they seek to represent (limited by State and underlying creditor), class members stand to recover substantially more than 14¢ or $1.40 or $14:

| Case Name | Class Members | Class Recovery Per Member |
| --- | --- | --- |
| Gill v. Convergent | 282 class members | about $1,000 |
| Vantuyl v. Convergent | 314 class members | about $1,000 |
| Parmelee v. Convergent | 36 class members | about $1,000 |

## V.     ACTUAL DAMAGE CLAIMS ARE UNFAIRLY COMPROMISED

Defendants claim that class members who participate will get 100% of actual damages if 5% participate. The basis of a 5% participation rate is unstated. Based upon the experience of counsel for the putative intervenors, including the law firms of Edelman Combs Latturner & Goodwin, LLC and Philipps & Philipps, Ltd, who have handled hundreds of such class action

settlements, *see, e.g.*, Dkt. 62-4, at ¶¶ 11, a more reasonable estimate for persons who paid significant amounts of money is 10% or more.

Furthermore, there is no reason to even require a claim form for actual damages. The class members with actual damages are persons who recently paid money to the Defendants. A claim form would not appear to accomplish anything other than to reduce participation.

Plaintiff correctly points out that with respect to the persons who have only statutory damages claims, there may be a large number of uncashed checks if checks for trivial amounts are simply sent out. This does not apply to the persons who actually paid.

Plaintiff instead argues that the 54,880 persons who made payments perhaps paid for reasons other than because they failed to get the disclosure that their debt was time-barred, such as to "eliminate it from their credit report" or to "repair their relationship with the creditor" or out of a sense of moral obligation (Dkt. 81, at p. 7). This is a strange argument for a plaintiff's counsel, as opposed to defendants, to be making. The short answer is that (1) without more, paying a debt or alleged debt does not result in its removal from a credit report; the payment merely results in its being listed as a paid debt or alleged debt; (2) a settlement, as opposed to a payment in full, is not going to put the consumer in good standing with the creditor; (3) many, if not all, of the debts were held by debt buyers, not creditors, (4) if a consumer has not paid a debt for a period of years, it is highly unlikely that making a settlement payment is motivated by anything other than the implication in the letter that the debt is legally enforceable, and (5) to the extent that the debts are held by debt buyers, the "moral obligation" argument makes no sense,

because the party to whom the consumer is making payment did not extend credit and did not lose anything through default.

It is even more inappropriate that this Court has not been provided with the exact amount that Defendant Convergent has collected from consumers on time-barred debts via its deceptive and misleading collection letters—apparently class members and the Court are expected to "deduce" this amount. (Dkt. 74, at p. 7.) The parties state that the $500,000 in actual damages ". . .could reasonably be expected to provide a reimbursement between 10 and 25 percent of the amount paid by the claimant". *Id*. That is simply not adequate – the FDCPA does not cap actual damages, *see* 15 U.S.C § 1692k(a)(1), and consumers should be reimbursed *all* or a substantial percentage of the amounts they paid as actual damages.

The bottom line is that if Defendants collected $15 million on time barred debts, a settlement that lets defendants keep $14.5 million of that and releases them from all further liability is not fair, reasonable, and adequate. Fed. R.Civ.P 23(e)(2). If the likelihood of winning the case is considered to be as low as a 50/50 proposition, the recovery should be $7.5 million, not $500,000.

The problem with the proposed settlement and concomitant expansion of the class is underscored by the fact that it makes no economic sense except as a collusive device to extinguish class members' rights cheaply. The cost of notifying 3.7 million persons, even at postcard rates, is likely to be $1 million. The settlement proposes payment of $1 million to the class and some lesser amount as fees. No rational plaintiff's attorney who had $1 million to invest would pay out $1 million in expenses to recover $1 million for the class, get back the $1

million invested, and obtain a smaller amount as fees—if they are successful in what they claim to be a doubtful case. An economically rational plaintiff's attorney would reduce the size of the class, either geographically or by limiting it to persons that paid money or took action in response to Defendants' communications. The "deal" makes sense only because the Defendants are willing to pay the notice costs. Obviously, Defendants are not doing this as an act of charity, but because they are getting something in exchange. What they are getting is a release of class members' claims at less than fair value.

## VI.    OPTING OUT IS NOT THE ANSWER

Much of Plaintiff's and Defendants' argument is that anyone who doesn't like the settlement can opt out.  It is indeed, puzzling that Defendant Convergent has sought, and received stays of the other actions against it, but then argues strenuously that those individuals whose actions it has successfully stayed should not be allowed to participate here. Of course, they recognize that most people will *not* opt out, with the result that their claims will be extinguished.

The opt out right is required to comply with due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 & n. 3 (1985); *Hecht v. United Collection Bureau, Inc.,* 691 F.3d 218, 222 (2d Cir. 2012). For example, a class member who was tricked into paying $20,000 on a time-barred debt may choose to pursue that claim individually, and due process gives him or her an absolute right to control his or her own claim.

Rule 23(c)(2)(B) accordingly requires that members of every class certified under Rule 23(b)(3), including a settlement class, be provided with notice and an opportunity to opt out.

Although members of a Rule 23(b)(3) class always must be given the right to opt out, the Court may approve under Rule 23(e) only those settlements that it independently determines are "fair, reasonable, and adequate." Rule 23 specifically requires that a court presiding over a proposed class settlement of a (b)(3) (damage) action affirmatively determine the settlement to be fair and adequate, regardless of the existence of opt out rights. The Court is a fiduciary for absent class members and has an independent obligation to protect their rights. *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

The right of class members to opt out of the settlement does not authorize a court to approve a bad settlement on the theory that the absent class members can always opt out. *In re General Motors Corp. Pick-up Truck Fuel Tank Prod. Liability Litig.,* 55 F.3d 786, 809 (3d Cir. 1995) ("[t]he right of parties to opt out does not relieve the court of its duty to safeguard the interests of the class"); *accord, True v. American Honda Motor Co.,* 749 F.Supp.2d 1052, 1080 (C.D.Cal. 2010). The protections afforded by the opt-out right and the court's determination of fairness are cumulative. And reliance on the opt-out right as a justification or excuse for approving an unfair precertification settlement is particularly improper when, as in this case, the absent class members are largely unsophisticated consumers who are in financial distress, and the gist of the underlying misconduct is that the defendant was able to take advantage of their lack of sophistication and legal knowledge to collect $15 million that they were under no legal obligation to pay.

## VII.    INTERVENTION IS WARRANTED BY THE APPLICABLE CASE LAW

The Tenth Circuit follows "a somewhat liberal line in allowing interventions." *Utah Assn.*

*of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001). "The threshold for finding the requisite legal protectable interest is not high." *Forest Guardians v. U.S. Dep't of Interior,* 2004 WL 3426413, at *5 (D. N.M. Jan. 12, 2004) (citing *Utahns for Better Transp. v. U.S. Dep't of Transp.,* 295 F.3d 1111, 1115 (10th Cir.2002)) ("Furthermore, the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention.").

Moreover, "Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate." *Forest Guardians,* 2004 WL 3426413 at *6. "The most common situation in which courts find representation adequate arise when the objective of the [movant] is *identical* to that of one of the parties." *Bottoms v. Dresser Indus., Inc.,* 797 F.2d 869, 872–73 (10th Cir.1986) (emphasis added). The Tenth Circuit has found that the "possibility of divergence of interest need not be great in order to satisfy the burden of the applicants." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior,* 100 F.3d at 845. The Tenth Circuit holds that differing interests, by itself, is sufficient to find inadequate representation. *See Clinton*, 255 F.3d at 1256.

As shown herein, the intervenors and the classes they seek to represent will suffer economic injury under the proposed settlement, and current class counsel's representation is inadequate because their objective is not "identical" to those of the intervenors.  Far from it. Rather, class counsel seeks to certify a nationwide class that would dilute the intervenors' and the state classes' recovery, while the intervenors seek certification of state-wide classes only.

If this Court does not outright deny certification of the proposed class and settlement, the putative intervenors should be allowed to intervene to conduct discovery which will allow this Court to better determine the fairness and reasonableness of the proposed class settlement, including discovery concerning how the proposed settlement was negotiated, how many other unnamed debt buyers are involved and what consideration was given to the ability of other debt buyers (on whose behalf many of the letters were sent) to contribute to the settlement, the amount Defendant Convergent collected from consumers, and how many different types of Defendant Convergent's form letters are at issue here.

## VIII.   THE INTERVENORS' CLASS ACTIONS ARE NEITHER UNWORKABLE NOR INCONSISTENT WITH THE NORMS AND CONVENTIONS OF CLASS ACTION LITIGATION

Defendants' additional arguments in their brief in opposition to the motions of Angel Cooley, Jeremy Vantuyl, Sue Gill, and Mary Jordan are without merit. (Dkt. 90, at pp. 3-6.)

First, Defendants seek to distinguish *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1998) from the instant case, arguing that *Mace* involved a debt collector losing one state-wide class action and continuing to commit the same practice in violation of the FDCPA, only to face a subsequent class action on a separate set of facts." In contrast, *Daugherty* "held Convergent's collection could violate the FDCPA, exposing it to numerous suits at once." (Dkt. 90, at p. 4.)

In fact, the claims in *Mace* involved both claims that the Seventh Circuit had determined to be unlawful in a previous case, *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), as well as additional claims. *Mace*, 109 F.3d at 341 and n.1) ("Form letters different from those sent to the plaintiffs in Mace were mailed to the plaintiffs in *Avila*. Some of the same provisions of the

FDCPA were violated by each set of letters.") So there is no meaningful distinction between *Mace* and the case at bar. *Mace* found no statutory obstacle to class actions restricted by state: "Further, if a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations." *Id*. at 344.

Moreover, far from being "unworkable", the nature of the violation of the FDCPA Convergent is alleged to have committed militates in *favor* of state-wide class actions and not one single nationwide class action. In each of the cases, Convergent is alleged to have attempted to collect a debt which was no longer judicially enforceable based on operative statute of limitations in the state in which the consumer resided. Convergent violated the FDCPA because it either did not disclose that the debt was no longer judicially enforceable or that a partial payment could re-start the statute of limitations clock. State-wide class actions are preferable to a single nationwide class because the statute of limitations for, say, a defaulted credit card debt is a question of state law. Each state has its own statute of limitations; a state-wide class action tailors the class definition to the statute of limitation of a particular state. If many states share a common statute of limitations – for example, states that have adopted the Uniform Commercial Code's statute of limitations for certain kinds of claims—then a multi-state class might be appropriate. Here, the class definition simply refers to letters sent to collect time-barred debts in which either (a) the term "settlement offer" is used, (b) proposes a partial payment of a debt, or (c) invites the consumer to contact Convergent within 45 days to receive a discount on a debt. (Dkt. 56, at p. 8.) This definition glosses over the variations among the states in statutes of limitations.???

Defendants next argue that this lawsuit should take precedence over all others because it was the first one filed on this issue, citing *Baldozier v. Am. Family Mut. Ins.*, CIVA04-cv-02174-WYD-CBS, 2005 WL 3499953 (D. Co. 2005). (Dkt. 90, at pp. 4-6). In quoting *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965), *Baldozier* described the "first-to-file" rule as follows: "The reason for the rule is that "[t]he simultaneous prosecution in two different courts of cases relating to the same parties and issues leads to the wastefulness of time, energy and money."' *Baldozier*, 2005 WL 3499953, at *2.

In the two class actions at issue in *Baldozier* both involved an identical defendant and nation-wide classes, *see*, *Baldozier*, 2005 WL 3499953, at *1. Here, neither the issues, nor the parties are truly the same. Some of the letters at issue involve no attempt at a disclaimer of the time-barred nature of the debt (*Ross*, *Alexander*, *Estrella*), while others do (*Parmelee*, *Vantuyl*, *Gill*, *Matthews*). None of the intervenors have sued one of the Defendants here – LVNV – while *Vantuyl*, *Gill* and *Cooley* have all brought claims against other debt buyers/collectors. Moreover, when this matter was filed, both the initial Complaint and the First Amended Complaint sought certification of a Colorado-only class, based upon the form or "template" of the letter sent to Plaintiff Ross. (Dkt. 1, at ¶¶ 49-51; Dkt. 33, at ¶¶ 51-53). When this matter was filed, it did not include any of the putative intervenors, nor most of their claims.  The "first to file" rule is simply inapplicable here.

## IX.   CONCLUSION

Plaintiff and Defendants repeatedly argue that because Plaintiff did things to harm the class—file in a less favorable forum and greatly broaden the class, while limiting recovery to an

extent likely to deter participation—the Court should deny intervention and allow Plaintiff to harm the class. That is not an argument for refusing intervention.  It is an argument why intervention is essential.  Intervenors' motions should be granted.

Dated: August 4, 2017

                    Respectfully Submitted,

                    Angel Cooley,

                    By:  /s/ Daniel A. Edelman
                    Daniel A. Edelman
                    Edelman Combs Latturner &
                      Goodwin, LLC
                    20 South Clark Street
                    Suite 1500
                    Chicago, Illinois 60603
                    (312) 419-0379
                    dedelman@edcombs.com

                    Christine Parmelee,

                    By:  /s/ David J. Philipps
                          w/permission
                    David. J. Philipps
                    Mary E. Philipps
                    Philipps & Philipps, Ltd.
                    9760 South Roberts Road, Suite One
                    Palos Hills, Illinois 60465
                    (708) 974-2900
                    davephilipps@aol.com
                    mephilipps@aol.com

                    Brian R. Bromberg
                    Bromberg Law Office, P.C.
                    26 Broadway, 21st Floor

New York, New York 10004
(212) 248-7906
brian@bromberglawoffice.com

Tamara Alexander,

By:  /s/ Karen L. Kellett_____
      w/permission
Karen Lynn Kellett
Kellett & Bartholow PLLC
11300 North Central Expressway
Suite 301
Dallas, Texas 75243
(214) 696-9000
(214) 696-9001
kkellett@kblawtx.com

Jeremy Estrella,

By:  /s/ Kelly Donovan Jones_____
      w/permission
Kelly Donovan Jones
Kelly D. Jones, Attorney at Law
819 SE Morrison Street, Suite 255
Portland, Oregon  97214
(503) 847-4329
kellydonovanjones@gmail.com

Mary Jordan,

By:  /s/ Larry P. Smith_____
      w/permission
Larry P. Smith
Smith Marco, P.C.
55 West Monroe Street
Suite 1200
Chicago, IL  60603
(312) 361-1690
lsmith@smithmarco.com

18

Theresa Matthews.

By:  /s/ Mark L. Vavreck_____
       w/permission
Mark Leon Vavreck
Gonko & Vavreck, PLLC
401 North Third Street
Suite 600
Minneapolis, MN 55401
(615) 659-9500
mvavreck@cgmvlaw.com

Jeremy Vantuyl and Sue E. Gill,

By:  /s/ David J. Philipps_____
       w/ permission
David. J. Philipps
Philipps & Philipps, Ltd.
9760 South Roberts Road, Suite One
Palos Hills, Illinois 60465
(708) 974-2900
davephilipps@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2017 a copy of the foregoing **RENEWED REPLY OF INTERVENORS IN SUPPORT OF MOTIONS TO INTERVENE** was filed electronically. Notice of this filing was sent to the following parties by operation of the Court's electronic filing system.  The parties may access this filing through the Court's system.

David Neal McDevitt                                 dmcdevitt@consumerlawinfo.com
Russell S. Thompson, IV                           rthompson@consumerlawinfo.com
Thompson Consumer Law Group, PLLC
5235 East Southern Avenue
Suite D106-618
Mesa, Arizona  85206


Robbie Malone                                          rmalone@mamlaw.com
Robbie Malone, PLLC
8750 North Central Expressway
Suite 1850
Dallas, Texas 75231


David J. Philipps                                       davephilipps@aol.com
Mary E. Philipps                                       mephilipps@aol.com
Philipps & Philipps, Ltd.
9760 South Robert Road
Suite One
Palos Hills, Illinois 60465


Brian R. Bromberg                                    brian@bromberglawoffice.com
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004


Karen Lynn Kellett                                    kkellett@kblawtx.com
Kellett & Bartholow PLLC
11300 North Central Expressway
Suite 301
Dallas, TX 75243

Kelly Donovan Jones                                kellydonovanjones@gmail.com
Kelly D. Jones, Attorney at Law
819 SE Morrison Street
Suite 255
Portland, OR 97214

Michael Fuller                                     michael@underdoglawyer.com
Olsen Daines PC
111 SW 5th Avenue
Suite 3150
Portland, OR 97204

Mark Leon Vavreck                                  mvavreck@cgmvlaw.com
Gonko & Vavreck, PLLC
401 North Third Street
Suite 600
Minneapolis, MN 55401

Larry P. Smith                                     lsmith@smithmarco.com
Smith Marco, P.C.
55 West Monroe
Chicago, IL  60603


/s/ Daniel A. Edelman____
Daniel A. Edelman
Edelman Combs Latturner &
   Goodwin, LLC
20 South Clark Street
Suite 1500
Chicago, Illinois 60603
dedelman@edcombs.com